UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 4:04CR572 JCH (FRB) |
| JACEN LILE BRIDGES, | ) ) | |
| Defendant. | ) | |

**MEMORANDUM,
REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). Defendant Jacen Lile Bridges filed pretrial motions which were heard before the undersigned.

Defendant's Motions

1. Motion to Suppress Statements (Docket No. 142), and
2. Motion to Suppress Evidence (Docket No. 143)

From the testimony and evidence adduced at the hearing on defendant's motions the undersigned makes the following findings of fact and conclusions of law:

**Findings of Fact**

Prior to and during August, 2004, agents of the Drug Enforcement Administration (DEA) and other law enforcement officials were conducting an investigation of a heroin trafficking organization operating between St. Louis, Missouri, and Phoenix, Arizona. During the investigation agents noticed the name of Jacen

Lile Bridges on financial documents and property rental records of interest to the investigation. As part of the investigation Officers Richard Wagner, Michael Sisco and James Catalano of the St. Louis DEA Task Force traveled to Phoenix, Arizona, in August, 2004. Upon arrival in Phoenix they met with Internal Revenue Service (IRS) Agent Koritala who was involved with the investigation in the Phoenix area. On August 3, 2004, Officers Wagner, Sisco, Catalano and Agent Koritala went to the residence of Jacen Lile Bridges at 7514 East Pierce in Scottsdale, Arizona, for the purpose of interviewing Bridges.

Upon arrival at the residence the officers knocked on the door. Bridges answered and opened the door. The officers/agents were in plainclothes. Each of the officers/agents identified themselves and displayed their badges and identification. Officer Wagner told Bridges that he would like to speak with Bridges and Bridges stepped back into the residence and held the door open for the officers to enter. The four officers and Bridges then went into and sat in the living room area of the residence. Officer Wagner sat next to Bridges on a couch. The officers explained the purpose of their visit. Bridges said that he had expected to be contacted by law enforcement officials and wanted to speak with them. Bridges appeared nervous. He asked if he was going to be arrested. Bridges was told that he was not under arrest, that he did not have to speak to the officers and that he could speak to an attorney if he wished. Bridges was asked if there were any other

persons in the residence. Bridges replied that there were not. Two of the officers then walked through the residence to see if anyone else was present and found none.

During the interview Bridges told the officers that he had been employed for six years as a fraud analyst. He stated that he had met an individual, Katrina Griffin, and had done various things at her request in an effort to help her because her husband had been imprisoned. He said he suspected that she might have been involved in unlawful activity but really did not want to know, reporting that he was just trying to help Griffin.

Agent Wagner asked Bridges for permission to search the residence explaining that he wanted to look for drugs, paraphernalia, packaging materials and documents which might relate to the investigation. Bridges replied that he had nothing to hide and agreed to permit a search of the residence. Officer Wagner then asked Bridges to sign a form so indicating, and he did so. The form acknowledged that the officers had asked to search the residence, that Bridges freely consented to the search and that he had not been threatened or forced in any way to consent to the search. (See Government's Exhibit 1). Officers Sisco and Catalano then searched the residence. They found and seized various documents including banking records and property rental and insurance records.

The officers/agents then left the residence. Bridges again asked if he was likely to be arrested. Officer Wagner told

him that indictments would be forthcoming in the future and any decision as to whether Bridges would be charged would be made by prosecutors in St. Louis. Wagner suggested that Bridges might want to retain an attorney.

The officers were at Bridges' residence for a total of 30-40 minutes.

## Discussion

### Statements

As grounds to suppress the statements made by him to law enforcement officials the defendant contends that the statements were made during "custodial interrogation" without his having been advised of and afforded his rights as required by <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

In <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966) the Supreme Court held that before questioning a person in custody law enforcement officials must advise the person that he has the right to remain silent; that any statements he makes may be used against him at trial; that he has the right to have an attorney present during questioning; and that if he cannot afford an attorney one will be appointed for him. <u>Id.</u> at 478-79. The officials may question the person after so advising him if the person voluntarily, knowingly and intelligently waives these rights and agrees to answer questions put to him by the officials. Absent such advice and waiver, statements obtained through interrogation of a person in custody are not admissible against the person at

trial. Id. at 479.

The proscriptions of Miranda apply only when the person questioned is "in custody." Illinois v. Perkins, 496 U.S. 292, 297 (1990). A person is in custody within the meaning of Miranda when, under the totality of the circumstances, "a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" Berkemer v. McCarthy, 468 U.S. 420, 440 (1984); California v. Beheler, 436 U.S. 1121, 1125 (1983). In determining whether a person was in custody at the time of questioning the court must examine the objective circumstances surrounding the interrogation, Stansbury v. California, 511 U.S. 318, 323 (1994), and to determine from those circumstances "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarthy, 468 U.S. at 442.

Miranda does not apply if the person is not in custody, even if the person is suspected of criminal activity or is a focus of the investigation. Oregon v. Mathiason, 429 U.S. 492, 495 (1977); Beckwith v. United States, 425 U.S. 341, 345 (1976).

In United States v. Griffin, 922 F.2d 1343, 1349 (8th Cir. 1990), the Eighth Circuit Court of Appeals identified a number of factors to which the court has looked in determining whether a person is in custody within the meaning of Miranda. Those factors are as follows: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the

suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or (6) whether the suspect was placed under arrest at the termination of questioning. Id.

Application of these factors, and considering the totality of the circumstances, leads to the conclusion that the defendant was not "in custody" within the meaning of Miranda, when he was questioned by the officers on August 3, 2004. At the beginning of the interview the defendant was told that he was not under arrest, that he did not have to speak with the officers and that he could consult an attorney if he wished. The defendant said that he wanted to speak with the officers and the interview continued. There is no evidence that the defendant was handcuffed or otherwise restrained in any way during the interview. No weapons were displayed during the interview and there is no evidence that any threats or promises of any kind were made to the defendant during the interview. The interview took place in the familiar surroundings of the defendant's home. Although there were four officers present, there is no evidence that the defendant was overwhelmed or coerced by their presence. At the conclusion of the interview and search, which did not last an inordinately long

period of time, the officers left the residence. The defendant was not arrested. Considering all of these circumstances the defendant was not "in custody" within the meaning of Miranda, and his statements should not be suppressed on the ground that he was not advised of his Miranda rights. United States v. Axsom, 289 F.3d 496, 500-503 (8th Cir. 2002).

**Evidence**

As grounds to suppress the items seized from his residence on August 3, 2004, the defendant avers that the "evidence was seized as a result of searches and other illegal intrusions into Defendant's person and property without a valid search warrant issued upon probable cause, and not pursuant to a lawful order or any other legal justification . . ." He further specifically alleges that, "Any consent to search allegedly given by the defendant was given under duress and coercion so as to render it invalid."

Searches conducted without a warrant are "per se unreasonable under the Fourth Amendment subject only to a few specifically established and well delineated exceptions." Katz v. United States, 389 U.S. 347, 357 (1967). One of those well delineated exceptions is a search conducted with the voluntary consent of a person authorized to give such consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Consent is voluntary if it is "an essentially free and unconstrained choice by its maker." Id. at 225 (quoting Culombe v. Connecticut, 367 U.S. 568, 604-05

1961). To determine whether consent is voluntary the totality of the circumstances surrounding the giving of consent must be examined, including the circumstances surrounding the encounter and the characteristics of the person giving consent. United States v. Chaidez, 906 F.2d 377, 381 (8th Cir. 1990). Among the characteristics of the person to be considered are: (1) the person's age; (2) the person's general intelligence and education; (3) whether the person was intoxicated or under the influence of drugs when consenting; (4) whether the person consented after being informed of their right to withhold consent or of their Miranda rights; (5) whether, because the person had been previously arrested, the person was aware of the protections afforded to her, as a suspected criminal of the legal system. Among the circumstances of the encounter to be considered are whether the person (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred. Id. These factors should not be applied mechanically, but rather are to be used as a guide for purposes of analysis.

Evidence before the court shows that the defendant is a mature adult. At his initial appearance and arraignment before this court he stated that he was 30 years of age, that he was

employed by American Express Company, and that he was also presently attending college in the Phoenix, Arizona, area. He told the officers that he was employed by American Express as a fraud analyst, a job obviously requiring some degree of intelligence and expertise. There is no evidence that the defendant was intoxicated or under the influence of drugs at the time of his encounter with the officers. Prior to the interview the defendant was told that he did not have to speak to the officers and that he could consult an attorney if he wished. The questioning of the defendant was brief and took place in his own home. There is no evidence that the defendant was threatened or intimidated by the officers in any way or that any false or misleading representations were made to him. Although he appeared nervous during the interview, "It is certainly not uncommon for most citizens . . . to exhibit signs of nervousness when confronted by a law enforcement officer." United States v. Beck, 140 F.3d 1129, 1139 (quoting United States v. Wood, 106 F.3d 942, 948 (10th Cir. 1997)). Indeed, the defendant told the officers he had been expecting their visit. As discussed earlier, the defendant was not under arrest or in custody when his consent to search was given. And significantly, he signed a written form acknowledging that he consented to the search, that such consent was freely given and that he had not been forced or threatened in any way to give such consent. The totality of these circumstances demonstrate that the consent to search was voluntary.

<u>Conclusion</u>

For all of the foregoing reasons the defendant's Motion to Suppress Statements and Motion to Suppress Evidence should be denied.

According,

**IT IS HEREBY RECOMMENDED** that defendant Jacen Lile Bridges' Motion to Suppress Statements (Docket No. 142); and Motion to Suppress Evidence (Docket No. 143) be denied.

The parties are advised that they have eleven (11) days in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

_____
UNITED STATES MAGISTRATE JUDGE

Dated this 29th day of January, 2007.